UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:23-cv-89-FDW

| QUENTIN FREEMAN, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| FNU TURNER, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on initial review of the pro se Complaint [Doc. 1]. Also pending are the Plaintiff's Motion for Appointment of Counsel [Doc. 3] and Motion for Preliminary Injunction and Temporary Restraining Order [Doc. 9; <u>see</u> Doc. 12 (Signature Page)]. The Plaintiff is proceeding in forma pauperis. [Doc. 7].

### I. BACKGROUND

The pro se Plaintiff, who is incarcerated at the Alexander Correctional Institution, filed the instant action pursuant to 42 U.S.C. § 1983. He names as Defendants in their individual and official capacities: FNU Turner, a Security Risk Group (SRG) officer; FNU Young, a mailroom worker; FNU Eckard, a case manager; and FNU Haufman, a case manager or F.C.C. supervisor. He asserts claims for violation of the "1st Amendment, 14th Amendment, retaliation, deliberate indifference, and violation of [his] constitutional right to access the courts." [Doc. 1 at 5]. For injury, he claims:

> My injury has been gain days taking away from me for the disciplinary over 250, my money not refunded for my quarterly monthly box I ordered & my shoes, which where supposedly sent back yet they won't give me my mail for me to find out from my family if they received a refund! My family is being charged money

every time the write me using the service text behind, yet I'm not getting any of my mail.

Ive had several anxiety ATTACKS since then due to the stress of not being able to communicate with my family due to the staff holding my mail, stopping my legal mail, and phone calls. I've missed 2 deadlines and I had to get time extension.

#250 gain/good days
$100 quarterly box – NC quarterly package program
$95 per of shoes – NC shoe program
$36 for disciplinary reports

The Industrial Commission Assistant Attorney General never received specific document from this facility that I sent to the Industrial Commission as well, so my case was extended and almost dismissed because Ms. Young & the SRG staff are holding my mail longer than the 48 hour mark or disapproving for no reasons related to NCDAC Policy. Due to the age of my family members has fell seriously ill and I had no knowledge till 2 months later.

[Id. at 7] (errors uncorrected). He seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, a jury trial, costs, and any additional relief that the Court deems just. [Id. at 8].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or

delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III. DISCUSSION**

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. __, 143 S.Ct. 1444 (2023).

**1. Parties**

The Complaint contains vague terms or pronouns such that the Court cannot determine the individual(s) to whom Plaintiff refers. [See, e.g., Doc. 1 at 5-6 (referring to "mail room staff," "others at the prison," and "they")]; see Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). The allegations that are so vague and conclusory that the Court cannot determine to whom they refer are dismissed without prejudice. These claims also cannot proceed insofar as they refer to individuals who are not named as Defendants. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("[T]o make someone a party the

3

plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018 WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity.").

The Plaintiff purports to sue the Defendants, who are state officials, in their individual and official capacities. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Plaintiff's claim for damages against the Defendants in their official capacities do not survive initial review and will be dismissed with prejudice.

2. **Disciplinary Infractions**

The Plaintiff appears to claim that: Defendant Turner wrongfully charged him on April 25, 2023[1] with disciplinary infractions for smuggling K-2 into the facility in a legal mail envelope; the Plaintiff received sanctions including the loss of privileges and gain time; and he was required to pay a $36 for "disciplinary reports." [See Doc. 1 at 5-6].

---

[1] The NCDAC website indicates that the Plaintiff has had 126 disciplinary infractions since he was admitted into custody on December 4, 2013, including two disciplinary infractions on April 25, 2023 for "misuse/unauth-use phone/mail" and "attempt Class A offense." See https://webapps.doc.state.nc.us/opi/viewoffenderinfractions.do?method=view&offenderID=1398952&listpage=1&listurl=pagelistoffendersearchresults&searchOffenderId=1398952&searchDOBRange=0&obscure=Y (last accessed Aug. 9, 2023); Fed. R. Ev. 201.

This claim appears to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 485-87 (footnotes omitted). In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the Heck rule to claims alleging constitutional deficiencies in prison disciplinary proceedings that have resulted in the loss of good time credits.

Here, if the Plaintiff were to prevail on his claim that the disciplinary charges were unfounded, that would necessarily imply the invalidity of the disciplinary convictions. See, e.g., Edwards, 520 U.S. at 646-47 (plaintiff's claims that he was denied the opportunity to put on a defense and that there was deceit and bias by the hearing officer would necessarily imply the invalidity of the disciplinary proceedings); Moskos v. Hardee, 24 F.4th 289 (4th Cir. 2022) (prisoner could not bring § 1983 due process claim that prison officials fabricated evidence so that plaintiff would be wrongfully convicted of prison disciplinary infractions, causing him to lose good-time credits, because the disciplinary conviction had not been invalidated). The Plaintiff has not alleged that the disciplinary convictions have been reversed or otherwise invalidated. Therefore, Plaintiff's claim appears to be barred by Heck.

### 3. Mail and Communications

The Plaintiff appears to claim that: Defendant Young opened an envelope marked "legal mail," in which K-2 was found, outside of the Plaintiff's presence and the Plaintiff never received that piece of mail; Defendants Turner and Young are holding his mail for "longer than policy allows" and are not sending the Plaintiff his "family mail;" Defendant Young is "hindering" and "denying" all of the Plaintiff's mail, "sayin disapproved with the reason that [Plaintiff's] family is discussing unauthorized funds, but that has nothing to do with the NCDAC Enterprise or this facility;" and the Plaintiff is unable to "contact [his] family while Ms. Young is hindering [his] mail." [Doc. 1 at 5] (errors uncorrected).[2]

"Courts have generally concluded that the First Amendment rights retained by convicted prisoners include the right to communicate with others beyond the prison walls." Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 213 (4th Cir. 2017). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Four factors relevant in determining the reasonableness of the regulation at issue are: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of exercising the right that remain open to prison inmates;" (3) what "impact" will "accommodation of the asserted constitutional right ... have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there are "ready alternatives" for furthering the governmental interest available. Beard, 548 U.S. at 529 (quoting Turner, 482 U.S. at 89-90). The prisoner bears the burden of proving the invalidity of the challenged regulation. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

---

[2] The Plaintiff makes numerous additional allegations about his mail, however, they are unattributed to any Defendant. [See, e.g., Doc. 1 at 6]; Section 1, *supra*.

For instance, prison officials may inspect an inmate's outgoing and incoming mail because such is reasonably related to legitimate penological interests. See generally Wolff v. McDonnell, 418 U.S. 539, 575 (1974); Turner, 482 U.S. at 89; see also Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999) (opening and inspecting a prisoner's outgoing mail is, "[w]ithout question," reasonably related to legitimate penological interests); Matherly v. Andrews, 859 F.3d 264, 281 (4th Cir. 2017) (a "necessary implication" of Altizer is that prison officials may open and inspect a prisoner's incoming mail). A prison rule requiring that legal mail be opened in the presence of the inmate, without being read, does not infringe on a prisoner's constitutional rights. See Wolff, 418 U.S. at 575–77; see also Turner, 482 U.S. at 89 (prison restrictions impinging on an inmate's constitutional rights are valid if they are reasonably related to legitimate penological interests); Haze v. Harrison, 961 F.3d 654, 660 (4th Cir. 2020) (recognizing the privileged and confidential nature of legal mail).

The Plaintiff's claim that Defendant Turner opened an envelope marked as legal mail outside his presence fails to support a First Amendment violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (stating that "a few isolated instances of plaintiff's mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct ... were not of constitutional magnitude"); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"). Any suggestion that Defendant Turner was not authorized to seize that piece of mail is frivolous. See generally Hanvey v. Blankenship, 631 F.2d 296 (4th Cir. 1980) (prison officials do not violate an inmate's constitutional rights when they seize contraband). The Plaintiff's vague and conclusory allegations against Defendants Turner and Young regarding mail delays and denials are insufficient to state a plausible First Amendment claim, in light of prison officials' legitimate

penological interest in inspecting his mail and in rejecting unauthorized content, especially in light of the Plaintiff's disciplinary conviction for smuggling contraband. The Plaintiff's First Amendment claims regarding his mail are, therefore, dismissed without prejudice.

**4. Retaliation**

The Plaintiff claims that Defendant Eckard has now referred him to ICON "which is 6 months behind the door in retaliation, b/c I can't use the phone or contact my family while Ms. Young is hindering my mail."[3] [Doc. 1 at 5].

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 F. App'x 271, 272 (4th Cir. 2018). To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds

---

[3] The Plaintiff's other allegations about retaliation are not attributed to any Defendant. [See Doc. 1 at 6]. They are also too vague and conclusory to state a plausible claim. Further, the Plaintiff's vague and conclusory allegations that Defendant Eckert was "deliberate[ly] indifferen[t]" and violated equal protection by sending him to ICON are insufficient to proceed. See generally Farmer v. Brennan, 511 U.S. 825, 835 (1994) (deliberate indifference entails "more than ordinary lack of due care for the prisoner's interests or safety," or "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result"); Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"); Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002) (a deferential standard of review applies to equal protection claims in the prison context, i.e., whether the disparate treatment is reasonably related to any legitimate penological interests).

directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Moreover, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id.

Here, the Plaintiff's vague and nonsensical allegations fail to plausibly establish that any Defendant took an adverse action against him because he engaged in a protected activity. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02. The retaliation claim is, therefore, dismissed without prejudice.

**5. Access to the Courts**

The Plaintiff appears to claim that Defendant Young denied him access to the courts by: contacting the Plaintiff's attorney without permission; stopping and "hindering" his mail; and giving his lawyer "problems about legal calls." [Doc. 1 at 5-6].

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), *aff'd*, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim challenging their conviction or conditions of confinement. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been

frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

The Plaintiff's vague and conclusory allegations about being "hindered" and having "problems" fail to identify any actual injury that he allegedly suffered as a result of any Defendant's actions. Accordingly, the Plaintiff's claims for denial of access to the courts are dismissed without prejudice.

### 6. Property Deprivations

Construing the allegations liberally, the Plaintiff appears to claim that Defendant Young denied him shipments of a "quarterly box" and a pair of shoes, for which he seeks reimbursement. [Doc. 1 at 5, 7].

Plaintiff has failed to state a due process claim based on the alleged deprivation of property because he has an adequate post-deprivation remedy in state tort law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (stating that intentional deprivations of property do not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) ("Under North Carolina law, an action for conversion will lie against a public official who by an unauthorized act wrongfully deprives an owner of his property."). The Court, therefore, will dismiss this claim.

### 7. Policy Violations

The Plaintiff claims that the Defendants violated various prison policies. [See Doc. 1 at 5]. However, a policy violation does not rise to the level of a § 1983 claim absent a plausible allegation of an underlying constitutional violation. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of

10

constitutional violation"). Therefore, the Plaintiff's allegations that the Defendants violated prison policies, this fails to state an independent § 1983 claim.

## 8. Pending Motions

The Plaintiff has filed a Motion for Appointment of Counsel [Doc. 3], and Motion for Preliminary Injunction and Temporary Restraining Order [Doc. 9].

The Plaintiff asks the Court to appoint counsel to represent him because: he cannot afford counsel and is proceeding in forma pauperis; his solitary confinement will greatly limit his ability to litigate; the issues in the case are complex and will require significant research and investigation; Plaintiff has limited access to legal materials and limited knowledge of the law; he relies on verbal communication with his family via pay phone for litigation assistance; Plaintiff's evidence and legal records will need to be gathered from Plaintiff's family and friends; Plaintiff's evidence, legal paperwork, and mail are being "hindered," held past the time specified in prison policy, thrown away, disapproved, and not sent "due to grievances filed on 2 different occasions on parties listed above;" a trial will likely involve conflicting testimony, and counsel would better enable Plaintiff to gather evidence, testimony from non-incarcerated individuals, present evidence, and cross-examine witnesses; and Plaintiff has repeatedly attempted to "exhaust all options only to be retaliated against by mail not being sent out on numerous occasions since March 21, 2023." [Doc. 3 at 1-2].

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Plaintiff has failed to demonstrate the existence of

exceptional circumstances that would warrant the appointment of counsel and, therefore, this Motion will be denied.

In his Motion for Preliminary Injunction and Temporary Restraining Order [Doc. 9], the Plaintiff asks the Court to: prohibit Defendants Turner, Young, Eckard, and Haufman from "purposely continuing to obstruct and/or hinder the delivery and/or reception of Plaintiff's ingoing and outgoing legal and personal mail, from continuously contacting and/or harassing, verbally or otherwise, Plaintiff's appellate attorney …; from fabricating and/or attempting to fabricate fictitious and/or misleading disciplinary infractions against Plaintiff with the express intent to injure, grieve, and/or afflict in any manner …; from perpetrating any and all forms of verbal and/or physical and/or emotional harassment, and/or adverse action …; and from having any further direct and/or indirect physical and/or verbal contact with the Plaintiff, so long as this civil action remains open or active…." [Id. at 1-2]. He claims that he is likely to succeed in this action and that the Defendants are "engaging in a systematic campaign of harassment and retaliation" against him, and that he is likely to suffer irreparable harm should relief not be granted. [Id. at 2].

Preliminary injunctive relief is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm

in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  Id. at 20.  The Plaintiff has not established any of the elements that would warrant preliminary injunctive relief.  Therefore, this Motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails initial review.  The claims against the Defendants for damages in their official capacities are dismissed with prejudice, and the remaining claims are dismissed without prejudice.  The Plaintiff's Motion for Appointment of Counsel, and Motion for Preliminary Injunction and Temporary Restraining Order are denied.

The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted in accordance with the terms of this Order. Any Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without further notice.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint [Doc. 1] is dismissed pursuant to §§ 1915(e)(2)(B)(i)-(iii).
2. The Plaintiff's claims for damages against the Defendants in their official capacities are **DISMISSED WITH PREJUDICE**.
3. The remaining claims are is **DISMISSED WITHOUT PREJUDICE**.

4. The Plaintiff shall have **thirty (30) days** in which to amend his Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without further notice.

5. The Plaintiff's Motion for Appointment of Counsel [Doc. 3] is **DENIED**.

6. The Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order [Doc. 9] is **DENIED**.

Signed: August 11, 2023

Frank D. Whitney
United States District Judge